UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEBORAH JUNE WOOD, | ) | |
| | ) | Case No. 1:19-cv-363 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| JO-ANN STORES, LLC, d/b/a JO-ANN | ) | |
| FABRICS AND CRAFTS, and SVP | ) | |
| SEWING BRANDS, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court are motions for summary judgment filed by Defendant Jo-Ann Stores, LLC, d/b/a Jo-Ann Fabrics and Crafts ("Jo-Ann") (Doc. 29), and Defendant SVP Sewing Brands, LLC ("SVP") (Doc. 27). For the following reasons, the motions will be **GRANTED**.

### I. BACKGROUND

On November 17, 2018, sewing machines displayed on the "endcap" of a shelving aisle inside a store owned and operated by Jo-Ann fell on and injured Plaintiff Deborah Wood after the endcap's backboard spontaneously shifted forward. (Doc. 29-1, at 20; Doc. 27, at 39–40.) A picture of the endcap taken after the accident is below:



PHOTO 000001

(Doc. 27, at 42; *see also id.* at 40 (SVP employee Nina Rice swearing that this is a post-accident picture of the endcap at issue).) Though Jo-Ann owned the store, it leased the endcap and surrounding area to Defendant SVP. (Doc. 29-1, at 4.) Prior to the accident, SVP displayed two unboxed sewing machines on each of the endcap's shelves. (Doc. 27, at 39–40.)

On the day of the accident, SVP employee Nina Rice and Plaintiff Wood stood next to the endcap for approximately ten minutes while "discussing various features/characteristics of the sewing machines," after which Wood "reached out to touch a sewing machine." (*Id.*) During the ten-minute period, the endcap "showed no signs of instability." (*Id.*; *see also* Doc. 29-1, at 29 (Wood testifying that she agreed she "didn't see anything wrong with" the endcap while standing near it).) As Wood reached out, however, the endcap "backing panel/pegboard spontaneously shifted forward thus causing the attached shelving to come into contact with" Wood. (Doc. 27, at 39–40.) Six to eight sewing machines displayed on the shelf struck Wood in the head, shoulder, arm, leg, and feet as they fell. (*Id.* at 30 (Wood testifying that the entire unit "came forward" but "caught on the cart," which stopped the endcap itself from collapsing entirely on her but "everything dumped off of it"); *id.* at 12 (Wood testifying that six to eight sewing machines "all [fell] off" the shelves and some "struck [her] in the head, . . . in the shoulder, in the arm, in the leg, [and] the feet"); *id.* at 17 (Wood testifying "correct" when asked if she "put [her] hand straight out to touch a machine," after which "something happened that caused the machines to fall on [her]"); *id.* at 18 (Wood testifying that after being struck, she told Rice she was not okay and that "[her] head was hurting").)

No evidence in the record establishes precisely why the endcap shifted forward and dumped the sewing machines on Wood. (*See generally* Docs. 27, 29-1, 31.) The store's manager since 2014, Sonny Daigle, stated in a declaration that the store's endcaps "were initially constructed in 2010" and that employees "routinely inspect and maintain . . . the aisles and endcaps." (Doc. 29-1, at 3–4.) To Daigle's knowledge, there had been no "prior complaint[s]" or "need to perform any maintenance or repair work on the . . . endcaps within the store." (*Id.* at 4.) Indeed, until the accident, "there had been no prior instances of collapse or instability

3

regarding the subject endcap or any other endcap." (*Id.* at 5; *see also* Doc. 27, at 44–46 (Grace Johnson, SVP's Director of North American Retail Sales, swearing that she had never received any complaints regarding the subject endcap); *id.* at 40 (Rice swearing that the endcap had previously been used to display unboxed sewing machines and that she had no reason to believe it was dangerous).)

On December 18, 2019, Defendants removed this one-count premises-liability case to this Court from the Circuit Court for Hamilton County, Tennessee. (Doc. 1; Doc. 1-1, at 5–6.) Defendants moved for summary judgment (Docs. 27, 29), and Plaintiff responded (Docs. 31, 32, 33), meaning the motions are ready for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the

4

record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

"Business propietors are not insurers of their patrons' safety." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). "Property owners are, however, required to exercise due care under all the circumstances." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (citing *Blair*, 130 S.W.3d at 764)). This "general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Id.* (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). The "duty does not include, however, 'the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Id.* (quoting *Rice v. Sabir*, 979 S.W.2d 305, 308–09 (Tenn. 1998)). By the same token, a "property owner 'is not liable for injuries occasioned by latent defects which are either concealed in defective workmanship or are incidental to the ordinary wear and tear of [property] and of which the

owner had no notice.'" *Id.* (quotation omitted). To succeed, then, a premises-liability plaintiff

> must prove the elements of a negligence claim, *and in addition*, must prove either that "the [dangerous] condition was caused or created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident."

*Id.* (footnote omitted; emphasis in original) (quoting *Blair*, 130 S.W.3d at 764).

> The elements of a negligence claim are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause."

*Id.* at 350 n.7 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). Whether a duty of care is owed "entails balancing of the foreseeable gravity of the potential risk of harm against the burden imposed on the defendant to prevent the harm." *Rice*, 979 S.W.2d at 309 (citation omitted).

Defendants argue that Wood has failed to offer evidence showing that the endcap was the kind of foreseeably "dangerous condition" that imposes a duty. Indeed, Plaintiff does not attempt to establish *why* the endcap collapsed, and instead asserts that because it did collapse, it must have been a dangerous condition. (*See* Doc. 32, at 3 ("The fact that 'endcap backing panel/pegboard spontaneously shifted forward' is the best direct evidence that the endcap was dangerous.").) But Defendants had no duty to "remove or warn against conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350 (quotation marks and citation removed). The fact that something went wrong is not, on its own, sufficient to establish that Defendants failed to guard against an unreasonable risk. *See, e.g.*, *Psillas v. Home Depot, Inc.* 66 S.W.3d 860, 865 (Tenn. Ct. App. 2001) ("[T]he mere occurrence of an injury is not by itself evidence of negligence[.] (citation omitted)). Whether an unreasonable risk should have been anticipated and avoided but was not—i.e., whether Defendants breached a duty—cannot be

meaningfully analyzed without identifying in the first instance what Defendants should have anticipated and then done or not done with respect to the endcap. *See Rice*, 979 S.W.2d at 309 (explaining that whether a duty exists "entails balancing of the foreseeable gravity of the potential risk of harm against the burden imposed on the defendant to prevent the harm" (citation omitted)). Indeed, store manager Daigle averred that routine inspections revealed no problems and there were "no prior complaints regarding any safety issues related to the aisles or endcaps within the store." (Doc. 29-1, at 4.) SVP employee Rice swore that the endcap had previously been used "in a similar manner to display unboxed sewing machines" and that there were "no prior instances of collapse or instability regarding the subject endcap" nor "any other indication[s] that the endcap was unsafe or dangerous." (Doc. 27, at 40.) Plaintiff herself testified that she "didn't see anything wrong with" the endcap while standing near it. (Doc. 29-1, at 29.)[1] In sum, no evidence establishes that the endcap posed a foreseeable and avoidable risk, and, accordingly, that it presented a dangerous condition which gave rise to a duty. Where no duty exists, no duty can be breached, meaning Plaintiff cannot carry her burden to establish that Defendants were negligent.

Plaintiff attempts to circumvent her lack of evidence by relying on the doctrine of *res*

---

[1] Plaintiff also speculated that there may have been too many sewing machines on the endcap, which could have "caused it to pull loose from the wall because it was not secure." (Doc. 29-1, at 24.) She conceded, however, that this was only a "belief," (*id.*), and that she had no particular basis for concluding "that the shelf was put together incorrectly" or was otherwise overloaded or being used improperly. (*Id.* at 25–26.) While Plaintiff is entitled to her belief, it is not supported by any facts establishing her personal knowledge of the endcap's weight capacity or weight load on the day of the accident. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.") And, even if Plaintiff's mere belief is admissible, summary judgment cannot be avoided merely because one holds a belief that is not supported by evidence. *Cf. Anderson*, 477 U.S. at 252 ("[T]here must be evidence on which the jury could reasonably find for the plaintiff [to avoid summary judgment].").

*ipsa loquitur*. While injury alone cannot establish negligence, *res ipsa loquitur* permits a factfinder "to infer negligence from the circumstances surrounding an injury." *Psillas*, 66 S.W.3d at 865 (citing *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999)). The doctrine is "available only when the instrumentality that caused the harm was within the defendant's exclusive control, . . . and when the plaintiff's injury could not have occurred without the defendant's negligence." *Id.* (citations omitted). The "doctrine does not permit a fact-finder to fix liability on a sheer leap of faith when the plaintiff's injury could reasonably have occurred even without the defendant's negligence." *Id.* (citation omitted). Accordingly, to use the doctrine of *res ipsa loquitur*, the plaintiff must show that (1) "the event that caused the injury is of a kind that ordinarily does not occur in the absence of negligence," (2) "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence," and (3) "the negligence is within the scope of the defendant's duty to the plaintiff." *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 849 (Tenn. 2017) (citations omitted).

Plaintiff has not provided any evidence to eliminate other possible causes of the endcap's collapse. *Id.* Here, as in *Psillas*, there are "at least three other plausible explanations for the [] injury apart from [Defendants'] negligence" that Plaintiff failed to exclude, thereby barring application of the doctrine of *res ipsa loquitur*. 66 S.W.3d at 866; *see also Jenkins*, 515 S.W.3d at 849 (explaining that *res ipsa loquitur* requires the plaintiff to establish that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence"). First, it is plausible that the endcap suffered from a defect in workmanship that could not have reasonably been detected by Defendants. Second, it is plausible that another customer destabilized the endcap. *Cf. id.* (rejecting application of *res ipsa loquitur* in part

8
Case 1:19-cv-00363-TRM-SKL   Document 40   Filed 01/26/21   Page 8 of 9   PageID #: 317

because "[a]nother customer could have left" the sharp object that injured a child).  Third, it is plausible that endcaps fail even in the absence of negligence, or in other words, that reasonable care could not have prevented this particular collapse.  In sum, Plaintiff gathered no evidence as to Defendants' negligence, excluded no alternative explanations, and now asks the Court to submit this case to a jury on "only a spark or glimmer of evidence" in hopes that the jury will "make a leap of faith to find the defendant liable for the plaintiff's injury." *Id.*  This, the Court cannot do.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## IV.     CONCLUSION

Accordingly, Defendants' motions for summary judgment (Docs. 27, 29) are **GRANTED** and this matter will be **DISMISSED WITH PREJUDICE.**

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**